The next case on the oral argument calendar this morning is Hyder v. Kemper Natl Services. You may proceed. Good morning, Your Honors. Craig Penrose for the Defendant Appellants, and good morning to my esteemed colleague at counsel table, and may it please the Court, I'd like four minutes for rebuttal. In this case, the district court erred as a matter of law by requiring that it requires reversal by this Court when it ignored the plain language in the long-term disability plan that contained the suit limitations period. Counsel, one quick thing that some folks don't seem to notice, if you want four minutes, you're going to have to stop when there's four minutes on the clock. I understand. Thank you for pointing that out, Your Honor, and I'm watching it like a hawk. The district court erred when it fashioned a suit limitations period not based on language in the plan, but based on the June 10th letter that was sent to Ms. Hyder that said, here's the information, please return it in three weeks. The Court determined that the three-week period is what started the three-year limitation, which is in the plan. That's what started the clock ticking. But how it got there, it didn't get there from looking at the proof of loss section in the plan. It got there from looking at the notice of claim section of the plan. And that section says, let us know within 30 days, give us notice of your claim within 30 days. At that point, we'll send you the forms, but if you don't get them within 15 days, don't wait any longer. Just send us the information. The Court took that section, which says notice of claim, not proof of loss, and then took the 15 days to say, well, that's optional. You can pretty much give us your information whenever you want or whenever we suggest you return it to us, which basically ignored the section of the plan that says, in unambiguous terms, many cases have looked at that virtual identical language and said that's unambiguous. That pretty much says you give proof of loss. In this case, it was 30 days before the end of the elimination period, which is 180 days, so you work backwards. Simple math says 150 days or five months from the time that you tell us your disability starts. So the district court basically ignored that and crafted a proof of loss based on language in a notice of claim section. In the briefs, my colleague does not ---- If indeed your the form that was sent to her and said respond within X time, if indeed that extended the time, if it did, so the statute of limitations started from the end of that, does it matter whether we're dealing with 150 days or the 30 days or whatever we're dealing with? Absolutely, Your Honor, because the distinction, and you raise a good point, the distinction is when proof is required under the plan versus when proof will ultimately be accepted so the claim is still considered. We have two different issues here. We have consideration of the claim versus the clock ticking for suit limitations. In fact, the language of the plan in the proof of loss section specifically says you must provide us proof no later than 30 days before the end of the elimination period, but then it goes on to say if for some reason you can't get it to us that quickly, that will not jeopardize your claim. It doesn't reference the suit limitations period. It doesn't make any reference to that. Much like that June 10th letter doesn't talk about suit limitations. So if you can't get us the proof on time, it won't jeopardize your claim. What will it jeopardize? Nothing. Nothing. No. So if it's not, if it's not, if the proof isn't there in a timely fashion, it doesn't jeopardize anything, correct? Well, I would take that back. There is the California insurance law that talks about notice prejudice. But short of that, Your Honor, it certainly wouldn't, and in this case, it certainly wouldn't affect it. Interestingly enough, that does raise an interesting question. There was actually a Seventh Circuit case that came out last month where the question was raised whether it would affect it in taking Your Honor's suggestion one step further. In this case, the suit limitations period would have ended October 21st, 2004. If nothing had happened and, hypothetically, Ms. Heider comes out of the woodwork on October 20th and says, oh, I'd like to make a claim, if that was the issue, there might be some issue in terms of the suit notification period. But even in this, even in this situation, we gave her until July to provide the information. It was denied in August of 2002. She still had over two years to file a claim. So really, the one issue of examining a claim versus the suit limitations period. She had two years to file a claim where? I'm sorry, what? You said she still had two years to file a claim. I'm sorry. Two years to file a suit. Okay. Sorry. I misspoke. No. She still had two years. In our instance, over two years to file a lawsuit. The Dole, again, from the Seventh Circuit, the Dole case talks about ERISA benefit cases really being much more like an administrative appeal because we're just dealing with a record. Now, the June 10th, 2002 letter. Yes. That's the one that's causing the problem, if it's a problem. True. A problem from the standpoint that. That's the issue. What did the June 10th, 2002 letter do? The district court made that the issue. I would agree with that. I don't think it's an issue at all because the plan is clear that proof is required at a specific time. If, and I use this hypothetical in my brief, let's say she asked for benefits in 2010. If we say, okay, you know what, give us your stuff in a week, does that mean is that when the clock starts ticking? I mean, you could put it out exponentially, and that ignores the purpose of a statute of limitations, number one, to stop stale claims, and number two, that the statute of limitations, or in this case the contractual limitations, are set in stone. It doesn't matter when the claim is decided. It doesn't matter when, if she asked for a late package of information. It doesn't matter if she can't get it in, like in this case, the information was due in October, or excuse me, the information was due in September, but she didn't even really get around to that issue until March, April, May. So the question is, is if you follow the defendant's, the appellant's interpretation, it's cast in stone. It's simple math to determine when the suit needs to be filed. Under Ms. Heider's interpretation, she throws out three interpretations of how the claim is ambiguous, which really, the two of them create ambiguity. The third one is my interpretation. So I made the analogy in my reply brief that if this Court throws out the first two suggestions, then the defendants are right. The first one was, well, proof could be required whenever reasonable. The plan doesn't say that. What the plan says is it must be given no later than 30 days prior to the elimination period. But if you can't do that, get it to as quick as is possible, and that will not jeopardize your claim. It doesn't say it changes the proof of limitations. It doesn't say anything. And the second suggestion counsel made was that it was 30 days after requested. And in that section, that really has nothing to do with this case, because that has to do with continuing disability. And this was obviously an initial disability determination. So that section doesn't have anything to do with this. So when you throw those two away, the only interpretation we're left with is the defendants. And, of course, the district court's interpretation, which I argued, creates massive ambiguity, and the plaintiff doesn't really rest on that theory per se. The other issue I wanted to touch on, which was kind of a backup argument by the plaintiff, was that all this suit limitations period in the plan doesn't really matter because let's go back to what the Ninth Circuit says, which is the clock starts ticking when the claim is denied. But I believe that the Wetzel decision, which Judge Nelson actually wrote, and I believe Judge Thomas, you were in the majority on that case, so clearly, I think, goes down two tracks. First, you look at the default borrowed statute of limitations in California, which is four years. And then once you hit that, then you have to go to any contractual limitations that may be contained in the plan and follow those. And if you meet both those tests, then you're okay. But I think Wetzel was clear that the issue was really you've got to meet both tests, which, when you think about it, and of course, we didn't really explain this, but I think that opinion does a really good job of kind of writing for the Court in terms of putting it all together, because that kind of – it answers all the questions. In other words, a lot of pension cases don't have this three years from disability because that's pretty much borrowed from insurance law, so that takes care of that. That's four years from claim denial. But it goes from the backup argument that, okay, the Wetzel case noticed that – in fact, it was in one of the footnotes that 42 of the 50 states actually have this three years from when proof of loss is due because it's borrowed from insurance law, which goes back to the National Commission on Insurance, which I believe has been around since the 50s. In fact, the Wolf case that I cited in my brief was actually another type of disability that was two years from the proof of loss. We have a huge history in terms of that language being in disability plans, basically borrowing from insurance law. You're under four minutes now. Do you want to answer? I'm sorry. I will just take one more, just to hit on a couple of quick points. I'd like to just address really quickly the estoppel backup argument that the District Court relied upon for the long-term plan. And when you read the opinion, it really doesn't go through the elements of estoppel at all. It goes back to, again, this June 10th letter. It says, well, that's when you had to return it. So plaintiffs or defendants are stopped from dealing with that – that argument. But the problem with estoppel and the LaManchi case talked about estoppel and the risk whether it was reasonable to rely upon a letter that doesn't say anything about proof of loss, limitations, suit limitations. Was there any reasonable expectation that that would change any of the language in the plan? Just very quickly, Ms. Heider, in her March letter, interestingly enough, says, I have reviewed the plan documents very carefully. This is a high-level employee who is making a very nice salary. So I think when she says she reviewed the documents very carefully, I think it was clear she could read and understand simple math. And this letter could in no way be determined to reasonably rely upon to change the – the – the suit limitations in the plan. I'll reserve the rest of my time for rebuttal. And I'll just rely upon my arguments for the short-term plan presented in the briefs. Thank you very much. Thank you, counsel. Good morning, Your Honors. If it pleases the Court, I am Richard Johnston. I am here this morning on behalf of Ms. Heider. Ending any questions the Court may have, I'd like to begin by responding briefly to Mr. Penrose's remarks. He first discussed the language of the policy as it is written. And I think his discussion indicates that there is a significant ambiguity in that policy with respect to what the word required means. The 30-day period, or the 150-day period, rather, by which proof of claim is due, has no consequences if it's missed. And so it's difficult to call that a requirement. If you miss it, just get the information as soon as you can, and everything is fine. There's a third prong, that information has to be submitted within 30 days of a request. Mr. Penrose says that that applies only to a continuing disability claim, but the document does not say that. The document says you have to file suit within a certain amount of time after proof of claim is required. It does not indicate what the source of that requirement has to be. It does not even say the requirement has to come from the plan. And so when Kemper sends out a letter in June saying, please submit your documentation by July 1st, that is a request for information. Let's see. The plan says that if you want long-term disability, am I right, you are to file your claim within 30 days after the start of the claimed period. Well, Your Honor, it says within 30 days of the start of the period for which you are filing a claim. Correct. That would correspond to the inception of liability on behalf of the insurance company. And so that deadline would not in this case have been until November of 2001, the end of the 180-day waiting period. So you would say that the person, just in general from this plan, the person ceases work, say, January 1st, 2002, and the disability could apply for long-term disability then, but doesn't worry about that until, say, five years later, and then files a claim and says, but I only want the claim, I only want disability starting five years later. I'm not going to worry about the first five years. That's okay. I think it is as far as it goes within the issues we've been discussing so far. Now, there may be other issues that apply to that about notice prejudice and the claim being late and whether the insurance company is prejudiced by that. Make it two years, whatever you like. Okay. In other words, even if the person is going to put in evidence that shows they really were disabled from January 1, 2002, if they wait two years to put it in, your view is that's okay, as long as you don't want the benefits for that two-year period. You can put in and say, I want the benefits starting in 2004, and that's okay. That complies with the plan. Is that your position? I believe it is, Your Honor. Now, as I recall, the second alternative, the one that says if it's not reasonably possible to submit your claim within the deadline, if memory serves, that says, however, you must get it in within one year thereafter. Now, I may be wrong about that because that, frankly, was not an issue in this case. Okay. So I don't know if that's responsive to your question in any case. And proof of loss says you must provide with proof of loss that you're unable to work no later than 30 days prior to the end of the benefit-qualifying period. Now, that isn't free-floating, it is said, correct? I'm sorry, Your Honor? That's not free-floating because the benefit-qualifying period is a certain period. That is correct. So you wouldn't, even if you could file your claim later, if you hadn't filed your proof of loss earlier, you'd still be out. Is that how you think the plan reads? You'd still be out. I'm sorry, I'm not following. You wouldn't get your benefit. I don't think so, Your Honor. There's a benefit-qualifying period, right? Do you know what that is? I do. Okay. What is the benefit-qualifying period? 180 days. 180 days from when? From the inception of the disability. Okay. So if your disability inception was January 1, 2002, this provision seems to say that even if you didn't have to put your notice in sooner, you still have to have given us the proof of loss information within 150 days after January 1, 2002, correct? It does seem to say that, and that is difficult to harmonize, that you'd have to give proof of a claim for which notice isn't due yet. And you, of course, didn't do that, but that's okay because? In the circumstances of this case, that's okay because Ms. Heider was affirmatively misled by the human resources folks at Vodafone who sent her correspondence during 2001 telling her to wait for 180 days and then call Kemper about her long-term disability claim. She followed that advice. Kemper, at that point, refused to accept her long-term disability claim because Kemper said she had to file a short-term disability claim first. After that ran its course, then in June of 2002, Kemper provides the claim form and the proof of claim documents for the long-term disability claim, and she complies with that. So they said wait 180 days and then ask about the claim. She waited how many days before she asked? Approximately 180 days, Your Honor. She followed that advice. And then she asked for the long-term disability, and at that point they sent her this letter. Which letter? June 10, 2002 letter. No, Your Honor. She phoned in December of 2001 to request long-term disability. At that point they said you don't get it because you didn't have short-term or something like that. At that point they considered it to be a short-term disability claim. They refused to accept a long-term disability claim. They said her short-term claim was denied because of the eight-day deadline. Right. She appealed that. After that had run its course, then in June of 2002 is when Kemper sent her the forms to initiate the long-term disability claim, for which she originally had phoned in in December of 2001 pursuant to Vodafone's advice. Gotcha. So in terms of the claim being filed, that was filed, you would say, within the proper time? I would, because it was within 30 days of the start of the period for which she was filing a claim, and it coincided with the advice she got from the human resources folks at Vodafone as well. So then your problem is the proof of loss. Well, yes, that is the issue. And that's, again, I think you said already, but I'm not sure, you get over the proof of loss problem by saying? Well, there's a number of things. Taking the policy as it's written, that policy is ambiguous because, as I say, it has several points at which proof of loss might be submitted. The first one is within 150 or within 30 days before the end of the benefit qualifying period. But that says, but if you can't do that, don't worry about it, get it in as soon as you can. The third one is within 30 days after we request proof of loss. I might add, Your Honor, that the time to sue provision talks about proof of your claim, not proof of loss. There is a slight difference in the language, which only adds to the ambiguity in this case. And then there's the provision that Judge Wilkin talked about that talked about after you submit a notice of claim, we'll send you the forms to submit a proof of loss, and you can provide a proof of loss once you get those. So there are several different times when proof of loss can be submitted. And the issue with respect to the time to sue provision is no one of those is unambiguously designated as the one provision, which triggers the inception of the time to sue period. Therein lies the ambiguity in this plan. But that all assumes that the language of the plan as written is what controls here. And for the various reasons we discussed in our brief, I don't think that's the case. The California Insurance Code has mandatory provisions that do not match the provisions in this plan. And Wetzel tells us that those mandatory provisions are what governs the party's relationship. So that has a number of impacts here, one being, albeit I acknowledge it was not raised below, but if the court in its discretion chooses to consider this purely legal argument about the proper interpretation of the insurance code, that indicates the contractual time to sue does not begin until the end of the insurer's liability, which has yet to occur in this case. It also means that the rule we see over and over again in the case is that the parties are free to contract for a shorter limitations period does not apply in California, because California has a statute in terms of disability policies that says, here's what you must contract for in terms of the limitations period in the contract. So that freedom of contract, which is discussed in all these cases, the unfettered ability to agree to a shorter limitations period, does not exist in California as a function of the insurance code. There is also the analysis represented by White v. Sun Life, which says that even for a contractual time to sue provision, regardless of the accrual provisions in the contract, the claim accrues at the conclusion of administrative appeal proceedings. And finally, there is price, which is the last definitive word in this circuit on the accrual of a contractual time to sue provision. And that says that the claim accrues when the claimant has reason to know that the claim has been denied. There's a bit of ambiguity whether that pertains or refers to an initial denial or the conclusion of administrative remedies. There is other case law that says it has to be a conclusive and unequivocal denial, which I would say would be the end of the administrative remedies. But all these legal principles would have to be overcome before we get to the language of the plan as written for purposes of evaluating the accrual date for the time to sue provision. I think we have your argument in hand. Any further questions? Anything else you'd like to add? Only one thing, Your Honor. I wanted briefly to touch on the standard of review with respect to the short-term claim. Kemper thinks that the factual findings should be reviewed de novo because it's documentary evidence as opposed to witness testimony. I think that overlooks the plain language of Rule 52, which says that oral or documentary evidence leads to clear error review for factual findings. The cases they cite about reasonable cause all pertain to purely, really purely legal analyses, things like construing statutes that happen to use the term reasonable cause. This case is much more like the cases we cited, negligence cases, determining when a statute of limitations accrues based on what a claimant reasonably should have known. Those are mixed questions of law and fact, which are reviewed for clear error, and I think that's the proper analysis here. Thank you, counsel. Thank you. We have about two minutes for rebuttal. Go ahead. Thank you, Your Honor. Just a couple of points very briefly. One of the questions that was raised in counsel's response I think is a little bit misconstrued, the language of the plan. The notice provision said 30 days after your 30 days after. I'll read it so there's no question. It says 30 days after the start of the period for which you are filing a claim. A claim begins on disability. It's just we don't owe anything until 180 days. So the argument that 30 days started in December sometime I think is incorrect, but I don't think it matters at the end of the day, because the period you're filing a claim is the first day of disability. It's just we don't owe anything for 180 days. The claim does not start on the 180th day. The claim starts on day one. We just don't pay for 180 days. Well, what if I choose to waive it for a year? I'm sorry, what? What if I choose to waive it for nine months? I don't file a claim for the first nine months. That's a good point. I notice you raised that question to counsel, and I think that would avoid what a statute of limitations is for, to prevent stale claims, because I could say in 2015, well, I'm going to waive my first 15 years. I hit the lottery or something. And that just ignores what the language says. Maybe so, but you guys drafted this thing. They didn't. And you knew how to say it's got to be done starting with a day certain. Yes, and that's exactly what we said. And you didn't say that here. You said after the period for which you're filing a claim. That's noticed, yes. That's not a day certain. Filing a claim. The period for which I'm filing a claim. That's not a day certain. It's a day that I choose. Right. Right. I see what you're saying. I see what you're saying. I see what you're saying. Yes. But that was you pinned it down to a day certain, you say. I mean, in terms of that proof of loss provision. So if you wanted to make it a day certain, you could have said that. I see what you're saying. Again, the notice, I see what you're saying. But that wouldn't affect the proof of loss, because proof of loss. Maybe not. We're talking about the claim now. Right.  You can make a claim. Like I said, she could have made a claim in 2003. Okay. And we could have examined it. But that does not go. Again, you go to the defendant's interpretation, it's 100 percent clear. 180 days from your disability. Not your claim. Your disability. Okay. And the disability is when you missed work. Thank you, counsel. Do you have another question? No. Okay. Thank you very much. Yeah. Thank you both for your arguments. The case is sure to be submitted.
judges: Fernandez, Nelson, Thomas